UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18-cr-523 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JOSHUA ALLEN DUNCAN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On April 24, 2019, defendant Joshua Allen Duncan ("Duncan") was sentenced to a custody term of 87 months, following his guilty plea to an indictment charging four counts of bank robbery, in violation of 18 U.S.C. § 2113(a). (Doc. No. 36 (Judgment); Minutes of Proceedings [non-document], 4/24/2019; *see* Minutes of Proceedings [non-document], 1/15/2019; Doc. No. 27 (Plea Agreement); *see also* Doc. No. 1 (Indictment).) At the time Duncan committed the four bank robberies charged in the indictment, Duncan was on supervised release for armed bank robbery in N.D. Ohio Case No. 1:07-cr-429, for which he received a custody term of 130 months, to be followed by 3 years of supervised release. (N.D. Ohio Case No. 1:07-cr-429, Doc. No. 35 (Judgment).) Duncan's convictions in the instant case resulted in violations of his supervision in No. 1:07-cr-429. Accordingly, the sentence he received in this case was to be served consecutive to a 33-month sentence imposed in N.D. Ohio Case No. 1:07-cr-429, for an aggregate custody

term of 120 months. (Doc. No. 36, at 2.[1]) Duncan is currently serving his sentence at Terre Haute USP and has an anticipated release date of August 9, 2027. (https://www.bop.gov/inmateloc//, lasted visited 1/10/2025).

Now before the Court is Duncan's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 38 (Motion).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 40 (Response)), and Duncan has filed a reply. (Doc. No. 43 (Reply).)

The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3353(a). *Dillon v. United States*, 560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)).

Duncan moves for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(o). Specifically, he argues that he is eligible for a reduced sentence under Amendment 821, Part A, which affected the sentencing guidelines' treatment of offenses committed while under a criminal justice sentence. (*See* Doc. No. 38, at 1.) Part A of Amendment 821, which now appears in the guidelines at U.S.S.G. § 4A1.1(e), limits the criminal history impact of "status points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

At the time of sentencing, the Court calculated Duncan's base offense level to be 20. (*See also* Doc. No. 29 (Revised Final Presentence Investigation Report ("PSR")), at 7 ¶ 22.) After the appropriate adjustments were applied—a 2-level increase pursuant to § 2B3.1(b)(1) because a financial institution was involved; a 4-level increase pursuant to § 2B3.1(b)(2)(D) because Duncan employed a dangerous weapon during the commission of the robberies; a 4-level increase for the number of units assigned at § 3D1.4; and a 3-level reduction for acceptance of responsibility—the resulting total offense level was 27. (*See also id.* at 7–9 ¶¶ 23–24, 28, 50–53, 55–57.) Duncan had prior convictions for conspiracy to commit bank larceny, armed bank robbery, and brandishing a firearm during a crime of violence, which collectively scored 3 criminal history points. (*See also id.* at 11–12 ¶¶ 62–63.) Two more points were added because Duncan was under a criminal justice sentence at the time of the instant offenses. (*See also id.* at 12 ¶ 64.) With a total of 5 criminal history points, Duncan was a criminal history category III. (*See also id.* at 12 ¶ 65.) The advisory guideline range at offense level 27, criminal history category III, was 87 to 108 months. (*See also id.* at 15 ¶ 84.) The Court, however, departed downward 2 levels to arrive at a final total offense level of 25 and an advisory sentencing range of 70 to 87 months. (Doc. No. 37 (Statement of Reasons), at 2, 4.) The Court imposed a sentence at the high-end of the advisory sentencing range. (*See* Doc. No. 36.)

In his motion, Duncan requests that the Court reduce his sentence based on the amended guideline range following the changes made to "status points" under Part A of Amendment 821.

3

(Doc. No. 38, at 1, 3.) Under the Amendment, because Duncan had 6 or fewer criminal history points, his "status points" would be eliminated, resulting in a total criminal history score of 3, which correlates to a criminal history category II. With a total offense level of 25 and a criminal history category of II, his amended sentencing guideline range is 63 to 78 months. He requests a new sentence at the upper-end of this new range; namely 78 months. (Doc. No. 38, at 1, 3; *see* Doc. No. 43, at 1.)

The government concedes that Duncan is eligible for a sentence reduction but urges the Court to exercise its discretion in denying the motion "based on concern for public safety because of [Duncan's] extensive and violent criminal history." (Doc. No. 40, at 1, 3.) In further support of its position, the government notes that Duncan has "shown himself to be not amenable to rehabilitation as he was already on federal supervision for bank robbery following a prison sentence at the time he committed the instant offenses." (*Id*. at 3.)

The Court agrees with the parties that Duncan is eligible for consideration of a sentence reduction under Part A. *See* U.S.S.G. § 1B1.10. Having concluded the amended guidelines range would have been applicable to Duncan had the Amendment been in effect at the time of sentencing, the Court proceeds to the second step of the analysis and considers whether such a reduction is warranted based on the factors set forth in § 3553(a). *Dillon*, 560 U.S. at 826 (citing § 3582(c)(2)).

Subject to the limits set forth in U.S.S.G. § 1B1.10(b), a court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce a defendant's sentence. *Dillon*, 560 U.S. at 821–22; *see United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing 18 U.S.C. § 3553(a) and directing district courts to consider all relevant statutory sentencing factors). Section 3553(a), in addition to requiring consideration of the

4

applicable guidelines and policy statements of the Sentencing Commission, requires the sentencing judge to consider the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from future crimes of the defendant; (4) to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner; and (5) the kinds of sentences available. *See* 18 U.S.C. § 3553(a).

Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment[.]" U.S.S.G. § 1B1.10 app. n. 1(B)(ii). Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment[.]" *Id*. app. n. 1(B)(iii).

The instant bank robberies were serious and dangerous and continue to warrant a significant sentence. In each robbery, Duncan brandished a weapon and placed multiple victims in fear for their safety. For example, in the first robbery (occurring on July 17, 2018), Duncan entered a PNC Bank brandishing a dark pistol, pointed it at bank employees, and told the employees that they had 30 seconds to fill his bag before he started shooting. (*See also* Doc. No. 29, at 5 ¶ 11.) Approximately three weeks later (on August 6, 2018), Duncan entered a Dollar Bank, pointed his firearm at two bank tellers and told them, "Not to look at his face and to give him all the money [and] not to do anything fishy." (*See also id*. at 5 ¶ 12.) Within the next two weeks, Duncan robbed two more financial institutions, each time pointing and/or waiving a pistol at bank employees while

5

he demanded cash. (*See also id*. at 5 ¶¶ 13–14.) Without question, Duncan's actions during these robberies were the acts of a dangerous individual.

The fact that he committed these dangerous acts (all of which involved the carrying, using, and brandishing of a weapon) while on supervised release in another case suggests that he is unwilling to refrain from possessing weapons and committing violent crimes and thus presents a serious danger to the community. (*See also id*. at 12 ¶ 64.) And unfortunately, the facts surrounding the 2007 armed bank robbery charged in N.D. Ohio No. 1:07-cr-429 demonstrate that the present conduct was consistent with his violent criminal history. In the 2007 armed bank robbery, Duncan entered a Key Bank branch, brandished a semi-automatic pistol, pointed the pistol at the tellers, and gave a note to one teller that said, "Tell everyone to come by you right now. No alarms or everyone dies." (*See also id*. at 11 ¶ 62.) Duncan received a substantial 130-month sentence for this prior armed bank robbery, and he reoffended within a year of his release to supervision. It is clear that the prior period of incarceration has failed to impress upon him the need to refrain from engaging in the same dangerous criminal activity.[2]

Duncan "does not dispute his criminal history or that he was not amenable to rehabilitation during his prior incarceration." (Doc. No. 43, at 2.) He insists, however, that this past behavior is "just part of the story." (*Id*. (citing Doc. No. 43-1 (Letter)).) He implores the Court to look "at what he has accomplished during this [most recent] period of incarceration and see the strides he has made towards change." (*Id*.) He highlights his efforts to address his drug addiction, including his

---

[2] Duncan's behavior during this prior period of incarceration was also far from exemplary. He had disciplinary infractions for using cocaine, assisting in the flooding of the special housing unit ("SHU"), refusing to obey an order, abusing phone privileges, possessing tobacco, possessing two homemade knives, assaulting another inmate, improperly using a security device, being in an unauthorized area, refusing a work assignment, refusing a drug/alcohol test, destroying property, possessing alcohol, possessing a dangerous weapon, fighting with another inmate, and other offenses. (*See* Doc. No. 40-1 (Inmate Discipline Data).)

6

participation in the Medication Assisted Treatment ("MAT") program. (*Id.*) He reports that he no longer craves opiates, and that it has "changed his life." (*Id.*) He also cites to his prison programming and psychological counseling (*see* Doc. No. 43-2 (Inmate Education Data); Doc. No. 43-3 (BOP Psychological Services Programs)), his work history while incarcerated, and the support he receives from his fiancée. (Doc. No. 43, at 3; *see* Doc. No. 43-4 (Letter from Julia Ingold).)

While the Court commends Duncan for the programming and counseling he has completed while incarcerated and encourages him to continue to work toward a life free from drug addition, it must also consider his post-judgment disciplinary record. According to institutional records supplied by the government, Duncan has been sanctioned for multiple infractions, including placing his arms through the SHU door and refusing to remove them, throwing urine and fecal matter through the SHU food slot, destroying a mattress and throwing the pieces through the food trap, possessing synthetic marijuana, destroying property, punching another inmate, abusing phone and email privileges, stealing, and misusing authorized medication. (*See* Doc. No. 40-1.) While the Court has no record of any infractions occurring in the last year, Duncan's past behavior suggests he remains unable or unwilling to conform his behavior in accordance with societal laws.

After taking into consideration all of the § 3553(a) sentencing factors, the Court finds that it is in agreement with the government that Duncan remains dangerous and does not merit a sentence reduction. Additionally, for the same reasons, the Court finds a reduction of his sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, and afford adequate deterrence.

For the foregoing reasons, Duncan's motion to reduce his sentence (Doc. No. 38) is DENIED.

**IT IS SO ORDERED**.

Dated: January 24, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**